UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW MEXICO

In re
Kimberly Rae Barnes,
        Debtor.                    No. 13-06-11169 SA

**MEMORANDUM OPINION ON CONFIRMATION**

    This matter came before the Court for preliminary hearing on confirmation of the Debtor's Chapter 13 Plan as Modified (docs 2 and 22), and the objections thereto by the Chapter 13 Trustee (doc 24) and by HSBC Auto Finance (doc 26). There is one issue remaining for confirmation[1]. That is, does negative equity in a traded-in vehicle affect the extent of the purchase money security interest that the seller holds? The Debtor and HSBC Auto Finance have briefed the issue (docs 33, 34, 35, 36). Having reviewed the briefs and being otherwise sufficiently informed, the Court issues this memorandum opinion. The Court finds below that a traded-in vehicle with negative equity should and does impact the extent of the purchase money security interest in the new vehicle. The Court has subject matter and personal jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b); this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A); and these are findings of fact and conclusions of law as required by Rule 7052 F.R.B.P.

**FACTS**

---

[1] The parties stipulated at the hearing that the applicable interest rate for the HSBC claim would be 10.25%.

The facts are not disputed. Debtor acquired her vehicle within the 910 days preceding her bankruptcy filing and HSBC possesses a valid, perfected, first priority lien against the vehicle. The Retail Installment Sale Contract was attached as an Exhibit to HSBC Auto Finance's objection to confirmation (doc 26). It provides:

| ITEMIZATION OF AMOUNT FINANCED | | | |
|---|---|---|---|
| 1. Cash price (including $421.92 sales tax) | | | $25,485.77 (1) |
| 2. Total Downpayment | | | |
| | Trade in 2005 DODGE NEON | | |
| | Gross trade in allowance | $11,000.00 | |
| | Less Payoff made by seller | $16,408.13 | |
| | Equals Net trade in | $-5,408.13 | |
| | +Cash | N/A | |
| | +Other REBATE | $2,500.00 | |
| | (If total downpayment is negative enter "0" and see 4H below. | | 0.00 (2) |
| 3. Unpaid balance of cash price | | | $25,485.77 (3) |
| 4. Other charges including amounts paid to others on your behalf | | | |
| | (Seller may keep part of these amounts) | | |
| | ... | | |
| | C. Other Insurance paid to insurance company | $600.00 | |
| | ... | | |
| | F. Government License and/or Registration Fees | $64.00 | |
| | ... | | |

| | H. Other Charges (Seller must identify who is paid and describe purpose) | | |
|---|---|---|---|
| | Franklin Ca for prior credit or lease balance | $2,908.13 | |
| | Quality Jeep Dealer Transfer Service Fee | $177.10 | |
| | Chrysler for Serv Contract | $545.40 | |
| | Total Other Charges and Amounts Paid to Others on your behalf | $4,294.63 (4) | |
| 5. Amount Financed (3+4) | | $29,780.40 (5) | |

The only issue the parties dispute is whether the $2,908.13 paid to "Franklin Ca" should be included in the purchase money obligation[2]. The parties have stipulated to include all other charges as part of the purchase money obligation.

**CONCLUSIONS OF LAW**

The Bankruptcy Abuse Prevention and Consumer Protection Act amended 11 U.S.C. § 1325(a) by adding several subsections, and a "hanging paragraph" after subsection (9) that states:

> For purposes of paragraph (5), section 506 shall not apply to a claim described in that paragraph if the creditor has a purchase money security interest securing the debt that is the subject of the claim, the debt was incurred within the 910-day [sic] preceding the date of the filing of the petition, and the collateral for that debt consists of a motor vehicle (as defined in section 30102 of title 49) acquired for the personal use of the debtor, or if collateral for that debt consists of any other thing of value, if the

---

[2] Neither party argued for or against the dual status or transformation theory. See In re Vega, 344 B.R. 616, 622 n.29 (Bankr. D. Kan. 2006). Therefore, the Court will not address those issues.

Page -3-

>     debt was incurred during the 1-year period preceding
>     that filing[.]

Purchase money security interest is not defined by the bankruptcy code. Therefore, the state law definition applies.

Section 55-9-103(b)(1) N.M. Stat. Ann. provides: "A security interest in goods is a purchase-money security interest: (1) to the extent that the goods are purchase-money collateral with respect to that security interest[.]" Section 55-9-103(a) N.M. Stat. Ann. provides: "In this section: (1) 'purchase-money collateral' means goods or software that secures [sic] a purchase-money obligation incurred with respect to that collateral; and (2) 'purchase money obligation' means an obligation of an obligor incurred as all or part of the price of the collateral or for value given to enable the debtor to acquire rights in or the use of the collateral if the value is in fact so used." Comment 3 Section 55-9-103 states, in part:

> 3. "Purchase-Money Collateral"; "Purchase-Money
> Obligation"; "Purchase-Money Security Interest."
> Subsection (a) defines "purchase-money collateral" and
> "purchase-money obligation." These terms are essential
> to the description of what constitutes a purchase-money
> security interest under subsection (b). As used in
> subsection (a)(2), the definition of "purchase-money
> obligation," the "price" of collateral or the "value
> given to enable" includes obligations for expenses
> incurred in connection with acquiring rights in the
> collateral, sales taxes, duties, finance charges,
> interest, freight charges, costs of storage in transit,
> demurrage, administrative charges, expenses of
> collection and enforcement, attorney's fees, and other
> similar obligations.

Case 06-11169-s13    Doc 39    Filed 04/06/07    Entered 04/06/07 11:47:07 Page 4 of 6

The Court finds that negative-equity in a trade-in vehicle is not part of the price of the new car. Negative-equity is not similar to sales taxes, duties, finance charges, interest, freight charges, costs of storage in transit, demurrage, administrative charges, expenses of collection and enforcement, or attorney's fees. Furthermore, paying the negative equity does not "enable" the debtor to acquire the new vehicle, it simply pays off the old loan. <u>Accord</u> <u>In re Price</u>, ___ B.R. ___, 2007 WL 664534 at *6 (Bankr. E.D. N.C. 2007); <u>In re Peaslee</u>, ___ B.R. ___, 2006 WL 3759476 at *9 (Bankr. W.D. N.Y. 2006); <u>In re Vega</u>, 344 B.R. 616, 622 (Bankr. D. Kan. 2006). <u>Contra</u> <u>In re Graupner</u>, 356 B.R. 907, 920 (Bankr. M.D. Ga. 2006)(Court found definition of purchase-money obligation ambiguous, so referred to the Motor Vehicle Sales Financing Act for its definition of "cash sale price.") <u>In re Ortega</u>, No. 13-06-11157 (Bankr. D. N.M. Oct. 6, 2006)(Order Denying Confirmation), cited by Debtor, is factually different and does not apply in this case. In <u>Ortega</u>, the cash rebate was applied to pay off the remaining negative equity. Therefore what the debtor financed was all related to the vehicle only.

Based on the above, the Court finds that the purchase money obligation for the purposes of 11 U.S.C. § 1325(a) is $26,872.27[3]

---

[3] Which is the $29,780.40 total financed less the $2,908.13 negative equity payoff.

plus interest, less payments made[4]. Debtor shall submit an order of confirmation in conformity with this opinion, approved by counsel for the Chapter 13 Trustee and HSBC Auto Finance within 2 weeks of this Memorandum Opinion.

                                              */s/ James S. Starzynski*
                                       Honorable James S. Starzynski
                                       United States Bankruptcy Judge

copies to:

Arun A Melwani
Attorney for Debtor
10749 Prospect Ave NE Ste E
Albuquerque, NM 87112-3281

James E Shively
Attorney for HSBC
2999 N 44th St Ste 500
Phoenix, AZ 85018-7252

Kelley L. Skehen
Chapter 13 Trustee
625 Silver Avenue SW
Suite 350
Albuquerque, NM 87102-3111

United States Trustee
PO Box 608
Albuquerque, NM 87103-0608

---

[4] The purchase money obligation is 90% of the total amount financed. So, it would seem that 90% of the remaining amount due should be purchase money obligation, and 10% of the remaining amount due is an unsecured claim.

Page -6-